FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA and the     )
PEOPLE of the VIRGIN ISLANDS,        )
                                     )
              Plaintiffs,            )     Criminal No. 2008-31
                                     )
         v.                          )
                                     )
RUPERT WALTERS, JR.,                 )
                                     )
              Defendant.             )
_____    )

ATTORNEYS:

Everard E. Potter, AUSA
St. Thomas, U.S.V.I.
     For the plaintiffs.

Jesse A. Gessin, AFPD
St. Thomas, U.S.V.I.
     For the defendant.


MEMORANDUM OPINION

GÓMEZ, C.J.

     Before the Court is the motion of the defendant, Rupert
Walters, Jr. ("Walters"), to suppress physical evidence and
statements.

I. FACTUAL AND PROCEDURAL BACKGROUND

     The Court held a hearing on Walters' motion on July 14,
2008.  At that hearing, the government called two witnesses, the
first of whom was Sergeant Clayton Brown ("Brown"), a fourteen-

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 2

year veteran of the Virgin Islands Police Department.  Brown
testified that at approximately 5:00 p.m. on April 14, 2008, he
and four other officers responded to an anonymous telephone tip
that several young men were smoking marijuana at Nature's Nook, a
fruit stand in Cruz Bay, St. John, U.S. Virgin Islands.  Brown
stated that the fruit stand had been out of business for a few
months and that a hand-painted "No Loitering" sign had been
posted outside by the stand's owner.

On approaching the fruit stand, Brown and Officer Derrick
Callwood ("Callwood") observed a group of men[1] under the roof of
the fruit stand.  Callwood observed Walters standing in the
middle of the men.  Brown and Callwood both detected what they
believed to be the odor of marijuana.  Callwood also observed an
individual holding what appeared to be a marijuana cigarette.[2]
As the officers neared the group of men, Brown saw many of the
men throw to the ground what Brown perceived to be smoking
paraphernalia, such as rolling papers.

One of the officers ordered the men to put their hands
against the wall.  Thereafter, Brown and Callwood noticed one of
the men -- who turned out to be Walters -- start walking away

---

[1]  The testimony reflects that there were six to ten men
congregated at the fruit stand.

[2]  Callwood stated that the individual he observed smoking
marijuana was not Walters.

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 3

from the premises.  Brown extended his arm and told Walters not

to leave.  According to Brown, Walters replied that he could not

be searched and that he had just arrived at the fruit stand.

Brown asked Walters if he had any sharp objects on his person.

Walters answered in the negative.  Brown thereafter patted

Walters down for officer safety and felt in Walters' pants pocket

a hard object that Brown believed to be a firearm.  Brown

immediately yelled, "gun, gun."  At that moment, Brown turned

Walters over to Callwood.

Callwood patted Walters down for officer safety and found a

firearm and a speed loader in Walters' pants pockets.[3]  Callwood

then asked Walters whether he had a license to possess the

firearm.  Walters responded in the negative.  At that point,

Callwood read Walters his *Miranda* rights and escorted him to the

nearest police station.  At the station, Callwood again advised

Walters of his *Miranda* rights.  Callwood made no further

inquiries of, or comments to, Walters.  Walters subsequently

stated on his own initiative that he had found the firearm in the

garbage.

Walters was indicted on one count of possession of a firearm

---

[3]  Walters was also found in possession of small plastic
bags containing what Callwood described as a green, leafy
substance.

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 4

in a school zone, in violation of Title 18, Section 922(q)(2)(A) of the United States Code, and one count of unauthorized possession of a firearm, in violation of Title 14, Section 2253(a) of the Virgin Islands Code.

Walters now seeks to suppress any statements and physical evidence.

## II. <u>ANALYSIS</u>

The Fourth Amendment prevents "unreasonable searches and seizures." U.S. Const. Amend. IV.  A seizure is usually reasonable when it is carried out with a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347, 356-357 (1967).  Warrantless searches are presumptively unreasonable. *See id.*  As an exception to this rule, a police officer may conduct a brief, investigatory search consistent with the Fourth Amendment without a warrant under the "narrowly drawn authority" established for a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  Such warrantless searches are appropriate where an officer possesses reasonable, articulable suspicion that criminal activity is afoot. *Id.; Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Reasonable suspicion "is a less demanding standard than probable cause." *Alabama v. White*, 496 U.S. 325 (1990).  Thus, because probable cause means "a fair probability that contraband

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 5

or evidence of a crime will be found," the level of suspicion necessary to justify a *Terry* stop is somewhat lower and can be established with information that is different in quantity or content than that required for probable cause. *Id.*; *Illinois v. Gates*, 462 U.S. 213, 238 (1983). However, the officer must demonstrate that the stop was based on something more than an "inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27). A police officer, therefore, may only conduct a *Terry* stop where "specific and articulable facts, together with all their rational inferences, suggest that the suspect was involved in criminal activity." *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002) (quoting *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998)). Consequently, courts "accord deference to an officer's judgment of whether criminal activity is taking place with an understanding that 'whether an officer has reasonable suspicion to warrant a stop . . . is often an imprecise judgment.'" *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (quoting *Robertson*, 305 F.3d at 168).

Here, the officers were investigating a group of congregated men who were allegedly involved in illegal drug activity. The location of the officers' investigation was in an area the officers knew to be, based on their many years of experience, a

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 6

high-crime area.  Indeed, testimony at the hearing reflects that
the officers had previously investigated marijuana use, in
particular, at or near that location.  Although "[a]n
individual's presence in an area of expected criminal activity,
standing alone, is not enough to support a reasonable,
particularized suspicion that the person is committing a crime,"
*Wardlow*, 528 U.S. at 124 (citing *Brown v. Texas*, 443 U.S. 47
(1979)), "the fact that the stop occurred in a 'high crime area'
[is] among the relevant contextual considerations in a *Terry*
analysis." *Id.* (citing *Adams v. Williams*, 407 U.S. 143, 145
(1972)); *see also Brown*, 159 F.3d at 149-50 (noting the relevance
of an area's reputation for criminal activity).  Thus, the
reputation of the area surrounding Nature's Nook as a place where
people congregate to smoke marijuana or engage in other criminal
activity is one articulable fact on which the officers could
legitimately have relied in conducting the stop. *See*, *e.g.*,
*United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir. 2006).

     On arrival at the scene, the officers perceived the odor of
what they believed to be marijuana.  That perception, based on
the officers' knowledge and experience, provided additional
support for the officers' reasonable suspicion that criminal
activity was afoot.  Here, as in the Third Circuit's decision in
*Ramos*, the Court is persuaded that the officers' detection of

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 7

marijuana and observation of its use, coupled with the other
circumstances in this case, provided sufficient particularity to
stop Walters.  Walters points to no authority to support his
apparent contention that the Court should apply the stricter
particularity requirement that probable cause calls for, even
though the Court's finding is based on reasonable suspicion. *Cf.*
*Ramos*, 443 F.3d at 309 n.6 ("As defendants point out, courts that
have addressed the particularity requirement in the context of
marijuana odor have established that the odor should be
particularized to some specific person or place.  However, these
cases all addressed the particularity requirement in the context
of a probable cause inquiry.") (citation omitted).

Moreover, while the officers did not specifically observe
Walters smoking marijuana or throwing marijuana paraphernalia to
the ground, the Court is convinced that Walters' unilateral
separation from the group by walking away and spontaneous
statements, discussed below, gave the officers whatever
particularized suspicion Walters urges is necessary. *See*, *e.g.*,
*United States v. French*, 974 F.2d 687, 692 (6th Cir. 1992)
(holding that there was reasonable suspicion to stop suspects who
had been riding "in tandem" with a truck from which a marijuana
odor was emanating); *see also United States v. Simpson*, 259 Fed.
Appx. 164, 166 (11th Cir. 2007) (unpublished) (noting "that when

United States, et al. v. Walters
Criminal No. 2008-31
Memorandum Opinion
Page 8

the officers approached the house, they smelled a strong odor of
burning marijuana coming from inside the house"), *cert. denied*,
128 S. Ct. 1910 (2008); *United States v. Ozbirn*, 189 F.3d 1194,
1200 (10th Cir. 1999) (concluding that the smell of marijuana
emanating from a motor home during a traffic stop sufficed to
form the reasonable suspicion necessary to justify the detention
of the driver and the passenger); *United States v. Brown*, 188
F.3d 860, 865 (7th Cir. 1999) ("The indications that [the
defendant] might be involved with drugs [were] enhanced by the
strong marijuana smoke odor in his vehicle . . . .").

    Furthermore, both Brown and Callwood testified that as the
officers approached Nature's Nook, they observed Walters –– who
was in the midst of the group of individuals –– begin walking
away from the premises.  Although simply walking away from the
police does not give rise to reasonable suspicion, *see Wardlow*,
528 U.S. at 125; *Florida v. Royer*, 460 U.S. 491, 498 (1983);
*United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000),
*cert. denied*, 532 U.S. 1014 (2001), "it is a factor that can be
considered in the totality of the circumstances." *Valentine*, 232
F.3d at 357 (concluding that officers had reasonable suspicion
where, *inter alia*, they "saw [the defendant] and his two
companions walk away as soon as they noticed the police car");
*see also United States v. Hunter*, 291 F.3d 1302, 1306-07 (11th

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 9

Cir. 2002) (finding reasonable suspicion where the defendant was located in an area with a reputation for high crime and walked away from illegal activity upon arrival of the police), *cert. denied*, 537 U.S. 1064 (2002).

Finally, after Brown told Walters to remain at the scene, Walters, unbidden, stated that he could not be searched and that he had only just arrived. Those statements could reasonably have led the officers to believe that Walters was nervous or being evasive. *See, e.g.*, *United States v. Kemp*, 214 Fed. Appx. 127, 132 (3d Cir. 2007) (not precedential) (affirming the denial of a suppression motion and noting that the defendant stated, "there is nothing in here," while putting his hand in his pockets); *United States v. Ray*, 145 Fed. Appx. 642, 646 (11th Cir. 2005) (not for publication) (noting that the defendant's pre-pat-down suspicious statement, "'these ain't my pants, these are my cousin's pants[,]' . . . created a reasonable belief [the defendant] may have been carrying a weapon on his person"); *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (noting that suspicious statements "may give rise to reasonable suspicion of criminal activity"); *cf. United States v. Jaramillo*, 25 F.3d 1146, 1153 (2d Cir. 1994) (finding no reasonable suspicion where, among other things, the defendant had not "made any suspicious statements").

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 10

In short, the Court finds that the totality of the circumstances gave the officers reasonable suspicion to detain Walters under *Terry*.[4]

During a *Terry* stop, law enforcement officers "may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo.'" *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). Thus, officers may conduct a limited pat-down if they "[are] justified in believing that the individual whose suspicious behavior [they are] investigating at close range is armed and presently dangerous to the officer[s] or to others." *Terry*, 392 U.S. at 24. The *Terry* Court further explained that "[t]he officer need not be

_____

[4] Walters argued neither in his motion nor at the suppression hearing that he was in custody when asked if he had a license to possess a firearm. Without dwelling on the issue, the Court finds that Walters was not in custody at that time. The stop took place during the daytime and next to a public road with several people passing by. There is no evidence that the officers physically restrained Walters beyond patting him down for safety reasons, spoke to him in harsh or coercive tones, or warned him that he might be taken to a police station. In short, Walters was not "restrained to the degree associated with formal arrest." *See*, *e.g.*, *United States v. Killingsworth*, 118 Fed. Appx. 649, 651 (3d Cir. 2004) (unpublished). As a consequence, Walters was not in custody for *Miranda* purposes when he answered the officers' question whether he had a license to possess a firearm. *See*, *e.g.*, *United States v. Willaman*, 437 F.3d 354, 360 (3d Cir. 2006) (concluding that because the defendant was not in custody, "[o]f course, in these circumstances *Miranda* is not implicated"), *cert. denied*, 547 U.S. 1208 (2006).

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 11

absolutely certain that the individual is armed; the issue is
whether a reasonably prudent man in the circumstances would be
warranted in the belief that his safety or that of others was in
danger." *Id.* at 27.

    In this matter, the officers testified that they feared for
their safety because of their knowledge that the area in which
they encountered Walters was reputed for its criminal activity.
The officers further testified that Walters began walking away
from the group of individuals whom the officers observed to be
engaging in illegal drug use.  Finally, when told to stay put,
Walters expressly told officers not to search him.  The Court
finds that these several facts, as well as all rational
inferences drawn from these facts, would have led a man of
reasonable caution to believe that Walters may have been armed
and dangerous.  The officers were therefore justified in frisking
Walters.

    In addition, the officers did not exceed the scope of *Terry*
when Callwood reached into Walters' pockets.  Although a
protective search generally involves a pat-down of the outer
clothing of a detained individual, *Terry*, 392 U.S. at 21; *Sibron
v. New York*, 392 U.S. 40, 65 (1968) (noting that protective
searches will typically be confined to "a limited patting of the
outer clothing of the suspect for concealed objects which might

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 12

be used as instruments of assault"), "the Supreme Court has also held that, in the context of a *Terry* stop, a police officer's reaching into the particular spot where a gun was thought to be hidden constituted a limited intrusion designed to insure the officer's safety and was reasonable." *Kemp*, 214 Fed. Appx. at 132 (citing *Adams*, 407 U.S. at 148).

Here, the officers reasonably believed that Walters had a gun based on their initial pat-down, and could therefore expand their inquiry to determine what dangerous object they reasonably believed to be in Walters' pants pocket. *See*, *e.g.*, *United States v. Harris*, 313 F.3d 1228, 1237 (10th Cir. 2002) (affirming the denial of the defendant's suppression motion and noting that after the officer had felt a bulge in the defendant's boot that he believed to be a gun, he "had the right to investigate further by lifting up Defendant's pantleg so that he could reach inside the boot"), *cert. denied*, 537 U.S. 1244 (2003). Accordingly, the physical evidence seized from Walters will not be suppressed.

Walters also seeks to suppress any statements he made to the officers. The testimony at the suppression hearing reflects that Walters made three statements.

Walters' first statement -- that he could not be searched -- will not be suppressed because Walters uttered that statement spontaneously and voluntarily before any question was asked of

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 13

him. *See United States v. Williams*, 16 Fed. Appx. 90, 92 (4th
Cir. 2001) (unpublished) ("[I]t is also well settled that
spontaneous or volunteered statements that are not the product of
interrogation or its functional equivalent are not barred by
*Miranda*, even if the defendant is in custody when the statements
are made.") (citing *Rhode Island v. Innis*, 446 U.S. 291, 299-301
(1980); *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir.
1993)), *cert. denied*, 534 U.S. 938 (2001); *see also United States
v. Johnson*, 136 Fed. Appx. 279, 283 (11th Cir. 2005) (not for
publication) ("Voluntary and spontaneous comments are admissible,
even if given after *Miranda* rights are asserted, as long as the
comments were not made in response to government questioning.")
(citing *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991)).

Furthermore, because Walters was subject to a valid *Terry*
stop, the officers were entitled to ask him questions "as long as
the[y] . . . d[id] not convey a message that compliance with
their requests [was] required." *See Florida v. Bostick*, 501 U.S.
429, 435 (1991).  The record in this matter does not suggest that
any such message was conveyed.  Indeed, the credible and
unrebutted testimony at the suppression hearing indicates that
Walters voluntarily answered the officers' question about whether
he was licensed to possess a firearm. *See*, *e.g.*, *United States v.
Francis*, 140 Fed. Appx. 184, 187 (11th Cir. 2005) (not for

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 14

publication) (concluding that the defendant was not in custody
where the record showed that he had "voluntarily consented to
answer the officer's questions"), *cert. denied*, 546 U.S. 1045
(2005).  The Court further finds that the officers' relatively
brief detention of Walters was reasonably tailored to dispel any
suspicions the officers may have had concerning Walters'
potential involvement in criminal activity, that is, whether
Walters possessed a firearm in violation of statute. *See*, *e.g.*,
*United States v. Scheets*, 188 F.3d 829, 838 (7th Cir. 1999)
(finding that the officers' questions "were specifically tailored
to establish [the defendant's] identity and either to confirm or
dispel the officers' suspicions regarding [the defendant's]
involvement in the bank robbery") (citation omitted), *cert.*
*denied*, 528 U.S. 1096 (2000).  Accordingly, because the officers
permissibly asked Walters whether he had a license to possess a
firearm and Walters voluntarily answered, Walters' answer to that
question will not be suppressed.

Once Walters answered the officers' question about his
unlicensed possession of a firearm in violation of statute, the
officers had probable cause to believe that Walters had committed
a crime. *See*, *e.g.*, *United States v. Muhammad*, 120 F.3d 688, 696
(7th Cir. 1997) ("Probable cause [to arrest] exists when at the
moment an arrest is made officers have 'facts and circumstances

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 15

within their knowledge and of which they [have] reasonably

trustworthy information' that would sufficiently 'warrant a

prudent man in believing that the [suspect] had committed or was

committing the offense.'") (alterations in original) (quoting

*Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *United States v. Brady*,

819 F.2d 884, 889 (9th Cir. 1987) (finding that officers had

probable cause based on the detainee's answer affirmative answer

to the question whether he had a gun in his car), *cert. denied*,

484 U.S. 1068 (1988).  The officers immediately read Walters his

*Miranda* rights, transported him to the nearest police station,

and again advised him of his rights.  Without prompting from the

officers, Walters thereafter made another statement.

"A defendant may waive his *Miranda* rights if the waiver is

made knowingly, intelligently, and voluntarily." *United States v.*

*Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) (citing *Miranda*, 384

U.S. at 444).  There are two factors to consider in determining

the effectiveness of a *Miranda* waiver:

> First, the relinquishment of the right must have been
> voluntary in the sense that it was the product of a free and
> deliberate choice rather than intimidation, coercion, or
> deception.  Second, the waiver must have been made with a
> full awareness of both the nature of the right being
> abandoned and the consequences of the decision to abandon
> it.  Only if the "totality of the circumstances surrounding
> the interrogation" reveal both an uncoerced choice and the
> requisite level of comprehension may a court properly
> conclude that the Miranda rights have been waived.

United States, et al. v. Walters
Criminal No. 2008-31
Memorandum Opinion
Page 16

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The credible, unrebutted testimony at the suppression hearing demonstrates that Walters understood the *Miranda* warning as read to him at Nature's Nook and shown to him in writing at the police station.  That testimony further shows that after having been twice advised of his rights, Walters voluntarily made a statement to the officers regarding the firearm that had been found in his possession.  The record is totally bereft of any indication of coercion on the part of the officers or incomprehension on the part of Walters.  Rather, all signs indicate that Walters' statement at the police station was the "product of rational intellect and free will." *See*, *e.g.*, *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995). Accordingly, Walters' statement at the police station will likewise not be suppressed.[5]

---

[5]  At the suppression hearing, Walters' counsel asserted that he could not effectively cross-examine Callwood based on Callwood's police report because certain pages were allegedly missing.  Those questions were apparently meant to impeach Callwood.  The Court ordered counsel to submit further argument in writing.  In response to that order, Walters filed a pleading in which he makes the following arguments:

1. That Officer Callwood testified under oath that the defendant executed a written Miranda Waiver before making a statement that he found the gun in the trash.
2. That the defendant did not execute any such waiver and indeed refused to sign a waiver. . . .
3. That Officer Callwood's credibility is now in issue

*United States, et al. v. Walters*
Criminal No. 2008-31
Memorandum Opinion
Page 17

### III. <u>CONCLUSION</u>

For the reasons given above, Walters' motion to suppress

will be denied in its entirety.  An appropriate order follows.


                              S\_____
                                  **CURTIS V. GÓMEZ**
                                     **Chief Judge**

_____

and all of his testimony should be disregarded by the
Court.
4. That the statement should be suppressed.

(Def.'s Supp. to Mot. to Suppress 1.)  Walters has also provided
an advice of rights form, which shows that he refused to sign it.

At the suppression hearing, Callwood testified on direct
examination that after he escorted Walters to the police station,
he advised Walters of his *Miranda* rights in writing.  On cross-
examination, Callwood stated that Walters signed an advice of
rights form.  Duly noting Walters' arguments, the Court
nevertheless finds Callwood's testimony credible and therefore
declines Walters' invitation to disregard that testimony.